656 A.2d 77

COMMONWEALTH of Pennsylvania, Appellee,

v.

Anthony Allen PAYNE, Appellant.

Supreme Court of Pennsylvania.

Submitted Sept. 21, 1993.

Decided Dec. 22, 1994.

Michael D. Foglia, Pittsburgh, PA, for appellant.

Robert E. Colville, Dist. Atty., Claire C. Capristo, Deputy Dist. Atty., Edward Marcus Clark, Kevin F. McCarthy, Asst. Dist. Attys., Pittsburgh, for appellee.

George S. Leone, Asst. Dist. Atty., Kathy L. Echternach, Asst. Chief–Appeals Div., for Amicus Curiae, Pennsylvania District Attorneys Association.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY and CASTILLE, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This case involves the question of whether the identity of a witness to a crime, where the witness also informed against Appellant, Anthony Allen Payne, at an earlier point in time, must be revealed to the defense at the price of dismissing the charges if it is not done. Under the following facts, we hold that the witness's identity must be revealed or the prosecution dropped.

Appellant was convicted under the Controlled Substance, Drug, Device and Cosmetic Act [1] with delivery of cocaine and possession with intent to deliver,[2] and possession.[3] The facts indicate that an undercover Pennsylvania State Police Officer

1. 35 P.S. §§ 780–101, et seq.

2. 35 P.S. §§ 780–113(a)(30).

3. 35 P.S. §§ 780–113(a)(16).

and a confidential informant, investigating drug activity, saw Appellant and a female standing on a corner. The informant pointed out or "fingered" Appellant and then went to Appellant and spoke to him. On returning to the trooper's vehicle, the informant told the trooper that they could make a drug purchase from Appellant (T.T., p. 9). Appellant and the woman drove off to another location, followed by the police vehicle. A back-up police vehicle apparently followed but was not further involved in the ensuing drug purchase (T.T., pp. 21–22). After dropping off the Appellant, the woman departed in her car. The trooper and the informant followed the Appellant on foot between two buildings where the trooper in the informant's presence paid the Appellant for 7.4 grams of cocaine. The so-called informant was now clearly a witness to the crime as well. This transaction took place on May 11, 1990, but the Appellant was not arrested until December 10 of that year. Neither the officer nor any other police had any contact with the Appellant in the interim, although the officer said he saw Appellant in the area on several later occasions.

At trial, where the officer was the only prosecution witness, defense counsel raised the "issue of misidentification" in response to the trooper's identification of the Appellant as the seller (T.T., p. 97). Although the Appellant admitted that his mother lived in the vicinity of the crime, he could not recall whether he visited her on the particular evening of the crime or where he was at that time (T.T., pp. 51–52). He testified that he had never met the arresting officer but believed that he had been "set . . . up in terms of giving a false name to the police. . . . I feel he made a mistake" (T.T., pp. 49–53, 78–82). In short, he denied participation in the crime.

In order to test the trooper's identification, defense counsel filed a motion in open court to force the prosecution to produce the missing informant-witness. The witness then would either confirm or dispute the identification (T.T., pp. 94–96). The argument, of course, is that the officer's identification could not be confirmed without discovery and cross-examination of the eyewitness to the transaction, the so-called informant.

The trial court denied the motion. Noting that the informant could be harmed by divulgence, the trial court held:

> As to the motion to disclose the identity of the confidential informant, this Court is of the opinion that the defendant has not met the requisite burden that the informant should be identified in this case.
>
> The testimony from the officer that the confidential informant identified the officer to the defendant (sic). There are facts of record which would indicate that the defendant in this case knew or had some knowledge of the confidential informant because the confidential informant identified the defendant to the police officer prior to making contact within the observations of the officer, plus the fact that the defendant in this case through his testimony indicates that he was not even there at the time that this alleged incident took place, and also the fact that the officer testified that disclosure of the informant would jeopardize the safety of the informant.
>
> Therefore, I deny defendant's motion.

(T.T., pp. 65–66).

According to the trial court, the issue of misidentification merely went to the weight and credibility of the evidence. The court concluded that "the only evidence we have here is direct sale. Direct from the defendant to the trooper." Later, "the only information as to the defendant is that he allegedly provided the introduction." (T.T., pp. 95–96).

In explaining the reason for its denial of the motion, the trial court additionally noted: (1) that under *Commonwealth v. Iannaccio*, 505 Pa. 414, 480 A.2d 966 (1984), *cert. den.*, 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985), the prosecution had neither the intention nor the need to call the informant as an eyewitness, while here the defense merely argued but could not specify any reasons why the informant could exonerate the defendant; and (2) that the court was "mindful of the safety of the incarcerated informant." (Slip opinion, pp. 4–5).

The Superior Court, in a memorandum opinion, affirmed on the basis of their own decision in *Commonwealth v. Mickens,*

409 Pa.Superior Ct. 266, 274, 597 A.2d 1196, 1200 (1991), which cited their earlier holding in *Commonwealth v. Knox*, 273 Pa.Superior Ct. 563, 417 A.2d 1192 (1980).

As to the instant facts, the Superior Court found that "the informant's status as the only other eyewitness . . . militate in favor of the disclosure of his identity." That conclusion, however, had to be balanced against the security of the informant, and since the trial court had made a factual determination that the informant would be jeopardized, that conclusion should not be disturbed (slip opinion, pp. 5–6).

For the reasons set forth below, we reverse.

■ The general problem of whether an "informant's" identity must be revealed has been addressed by our law in two specific lines of cases: those where an informer provides probable cause for the issuance of a search warrant; and non-warrant cases, in which the courts have explored the problem of disclosing "material witnesses," where the defense of mistaken identity is raised to challenge the prosecution.

In search warrant cases, our earlier decisions held that a defendant could go beyond the four corners of the warrant to challenge the veracity of the affiant's averments establishing probable cause. In *Commonwealth v. Miller*, 513 Pa. 118, 518 A.2d 1187 (1986), however, we modified those decisions by insisting that a defendant seeking an inquiry into the veracity of the statements in the affidavit must first put forth a "substantial preliminary showing" of the "potential falsity of those facts." *Miller* also ruled that "where it is established that the disclosure of such information would jeopardize the safety of the nongovernmental informant," disclosure would be forbidden. The potential injury to the informant would far outweigh the possibilities that perjured police statements would remain undetected. 513 Pa. at 133–134, 518 A.2d at 1195.[4]

---

4. In *Miller* we also rejected *in camera* hearings designed to examine informants.

In the instant case, the trooper testified that the undisclosed informant "fingered" the Appellant and approached him and spoke to him.

In non-warrant "informer as a material witness" cases, our leading decision is *Commonwealth v. Carter*, 427 Pa. 53, 233 A.2d 284 (1967), where the defense of mistaken identity was directly at issue. In *Carter*, we accepted the government's privilege of non-disclosure but ruled that the privilege must give way where disclosure of an eyewitness's identity is relevant and helpful to the defense or is necessary to a fair determination of a cause. In reaching this conclusion, we relied on *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). We further held that the proper balance between the prosecution and defense necessarily must tip in favor of disclosure where guilt is based solely on a single observation by the police but testimony from a *"more disinterested source is available."* 427 Pa. at 61, 233 A.2d at 288. (Emphasis in original). Where other corroboration of the officer's testimony exists, disclosure of the informant's identity is, of course, not necessarily required. *Carter* also rejected the Commonwealth's contention that secrecy is necessary to fight the drug trade or possible retribution against the informant. 427 Pa. at 63–64, 233 A.2d at 289. Fundamental requirements of fairness mandate disclosure if the informer is the only material witness besides the single police officer. *Carter* seems directly applicable to the facts of the instant case.

Our first decision after *Carter* on this subject was *Commonwealth v. Lloyd*, 427 Pa. 261, 234 A.2d 423 (1967), also involving mistaken identity in which a new trial was granted with our approval because the sole eyewitness to testify was the police officer and the informant was a material witness. In

Obviously, then, the undisclosed informant knew the Appellant and, a fortiori, the appellant knew him. Such being the case, how can the production of the informant be injurious to him when it is admitted that his identity must be already known to Appellant?

On the other hand, if this is a case of mistaken identity and the informant does not identify the Appellant as the person he "fingered" and saw dealing drugs with the trooper, how can we permit the safety of the informant (who knows the risks he takes as an informant) to convict an innocent person? In any balancing test, innocence must prevail!

1975, this Court followed the same reasoning in *Commonwealth v. Washington*, 463 Pa. 206, 344 A.2d 496 (1975).

The instant record reveals that Appellant testified at the evidentiary hearing that he had not met the trooper prior to this arrest and that he had not been at the apartment complex where the transaction occurred on the night in question. What is that if not "evidence that suggests he was not at the scene?" In the face of this testimony, how could the Commonwealth suggest that the officer's testimony remained uncontradicted? This is precisely the kind of showing which we indicated in *Carter* would suffice to require disclosure. Where the defense is one of mistaken identity, the defendant can do no more than deny his involvement and suggest that another eyewitness might offer evidence that would support his claim. Here, that suggestion is bolstered by the fact that the arrest was not made until seven months after the incident, which was the only direct contact the officer had with the buyer. Surely this lapse of time allows for the possibility that the officer's memory of the transaction was mistaken.

Appellant's conviction must be vacated and the matter remanded to the Court of Common Pleas of Allegheny County for further proceedings not inconsistent with this opinion.

MONTEMURO, J., who is sitting by designation, did not participate in the consideration or decision of this case.

CASTILLE, J., files a concurring opinion.

NIX, C.J., concurs in the result.

CASTILLE, Justice, concurring.

I agree with the majority's conclusion that under the instant facts of this case, namely the lengthy time period between the alleged transaction and the arrest, appellant is entitled to a new trial. However, I am troubled by the manner in which the majority has analyzed the trial court's responsibility to weigh other relevant factors before considering whether to disclose the identity of a confidential informant.

This Court has repeatedly acknowledged that the Commonwealth has a qualified privilege to refrain from disclosing the identity of certain material witnesses, including confidential informants. *Commonwealth v. Herron,* 475 Pa. 461, 380 A.2d 1228 (1977); *Commonwealth v. Washington,* 463 Pa. 206, 344 A.2d 496 (1975); *Commonwealth v. Carter,* 427 Pa. 53, 233 A.2d 284 (1967). The purpose of the privilege is to preserve the public's interest in effective law enforcement. *Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957); *Commonwealth v. Bonasorte,* 337 Pa.Super. 332, 352, 486 A.2d 1361, 1372 (1984) ("Protecting the identity of informants is recognized as a vital public interest because it is necessary to protect the flow of information from informants as well as to insure the safety of informants"). In recognizing this privilege, this Court accepted the balancing test as set forth by our United States Supreme Court in *Roviaro:*

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders non-disclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and *other relevant factors.*

*Carter,* 427 Pa. 53, 59, 233 A.2d 284, 287 (1967), *quoting, Roviaro,* 353 U.S. 53, 62, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957) (emphasis added).

As the majority reaffirms today, the *Carter* decision also held that the balance tips in favor of disclosure where guilt is based solely on a single observation by the police but testimony from a *more disinterested source is available. Carter,* 427 Pa. 53, 61, 233 A.2d 284, 288 (1967). I fear the majority places too much weight on this factor; therefore, I must emphasize that there is much more to this inquiry, even under the limited facts and circumstances of *Carter* and in the instant case.

Indisputably, the safety of the confidential informant is a controlling factor in determining whether to reveal his identi-

ty. Thus, the "scales of disclosure" should not tip in either direction until (1) the defendant has established that disclosure will materially aid in his or her defense and (2) the Commonwealth has had an opportunity to establish evidence concerning the safety of the informant that outweighs the defendant's interest in disclosure.

Before an informant's identity may be revealed, the defendant must lay an evidentiary basis or foundation that the confidential informant possesses relevant information that will *materially aid* the defendant in presenting his or her defense and that the information is not obtainable from another source. *See Herron,* 475 Pa. 461, 466, 380 A.2d 1228, 1230 (1977); *see also, Commonwealth v. Bradshaw,* 238 Pa.Super. 22, 29, 364 A.2d 702, 706 (1975); *Commonwealth v. Pritchett,* 225 Pa.Super. 401, 407, 312 A.2d 434, 438 (1973). Bare or bald assertions that the witness will aid in the defense are not sufficient. *Herron,* 475 Pa. 461, 466, 380 A.2d 1228, 1230 (1977) ("more is necessary than a mere assertion by the defendant that such disclosure might be helpful in establishing a particular defense"). Although the defendant cannot be expected to predict exactly what the witness would say, he or she must demonstrate that there is a reasonable likelihood that the witness will exonerate the defendant and that the evidence is not obtainable from another source. *See Commonwealth v. Knox,* 273 Pa.Super. 563, 568, 417 A.2d 1192, 1194 (1980); *see also, Pritchett,* 225 Pa.Super. 401, 408, 312 A.2d 434, 438 (1973).

Furthermore, simply because appellant is asserting the defense of mistaken identity, does not mean that he is automatically entitled to the informant's identity. If this were the conclusion of this Court, every suspect arrested under analogous circumstances would be able to assert mistaken identity knowing the Commonwealth's reluctance to expose their confidential witnesses, thereby hoping that the Commonwealth withdraws the charge so as to protect its witness from possible harm. As we have stated, there is an important public interest in protecting the free flow of information in further-

ance of effective law enforcement. *Roviaro,* 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957).

Once a foundation is established that the informant's identity will materially aid in the accused's defense, the trial court must then afford the Commonwealth an opportunity to present evidence that disclosure of the confidential informant's identity would subject him or her to danger that is reasonably specific and liable to occur (e.g. evidence of defendant's prior record, propensity for violence, reputation in the community, relatives at risk, serving a prison sentence, etc.) so that the trial court can make an informed decision by weighing the risks of danger against the need for disclosure. If the Commonwealth makes a reasonably specific showing that the informant or that informant's family or friends would be harmed or killed in retaliation for the confidential informant's assistance to the police, the Commonwealth's privilege should prevail. Special precautions may be necessary in this weighing process, such as an *in camera* hearing to determine whether the informant's testimony would in fact be helpful to the defendant. *See Pritchett,* 225 Pa.Super. 401, 410, 312 A.2d 434, 439 (1973) (disclosure of a confidential informant's identity should be denied or special precautions ordered if the Commonwealth makes a convincing showing that the informant may be injured or killed).

Finally, in the instant matter, rather than forcing the Commonwealth to drop the prosecution if the Commonwealth chooses not to jeopardize the confidential informant's safety by disclosing the witness's identity, the defense should be permitted instead to request that the fact finder consider the absence of the "material" witness and any adverse inference resulting from it, thus, curing any prejudice caused to appellant due to the missing witness. By employing a "missing witness" charge the fact finder will still be required to weigh other relevant testimony and still take into account the factor of the Commonwealth not presenting a witness which is only available to the Commonwealth. There are no other circumstances under which a party to a legal matter has what amounts to a directed verdict (not guilty in this case) where a

64

material witness uniquely available to one party is not presented. The punitive procedure of forcing the Commonwealth to drop all charges if the Commonwealth concludes that identifying a confidential informant will jeopardize the informant's safety is not in the public's interest in prosecuting criminal conduct in our society.

Some information concerning the commission of crimes is simply unavailable through the normal course of police investigations; therefore, confidential informants have become a significant asset in combating criminal conduct, especially in the continuing fight against the proliferation of drugs. To force disclosure of the confidential informant's identity absent a showing by the defendant that the informant would materially aid the defendant's case, unnecessarily jeopardizes the life of the informant and the police officers who work with him. Requiring less would simply play into the hands of those defendants who merely want to learn the identification of his or her Judas in order to make the informant his or her next victim.