J-A06011-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WILLIAM BROWN IV | : | No. 1425 WDA 2019 |

Appeal from the PCRA Order Entered August 14, 2019
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0011189-2013

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED:  May 18, 2021**

The Commonwealth appeals from the post-conviction court's August 14, 2019 order granting Appellee's, William Brown IV, petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  The PCRA court awarded Appellee a new trial based on its conclusion that his trial counsel had acted ineffectively by not filing a motion to disclose the identity of a confidential informant ("CI") in this case.  After careful review, we reverse the PCRA court's order.

The PCRA court summarized the facts of Appellee's underlying convictions, as follows:

> In June of 2013, Sergeant James Newcomer of the Tarentum Police Department began conducting an investigation with a [CI] who had purchased heroin from Appellee.  Sergeant Newcomer and fellow officers utilized ground surveillance to conduct three controlled buys from Appellee on June 16, 2013, June 17, 2013, and June 19, 2013.  ([N.T. Trial, 4/6/15, at] 28-30, 32, 40, 46).

Specifically, on June 16, 2013, officers met with the [CI], provided him with pre-recorded funds, and set up surveillance outside of 614 Roup Ave[nue] in Tarentum[,] where Appellee and his co-defendant[, Djuan Williams,] were believed to be residing. ([*Id.* at] 34). Sergeant Newcomer observed Appellee exit the residence, get in a gray Dodge Dart, and drive to the prearranged meeting area. Sergeant Newcomer followed Appellee to the predetermined location where he observed Appellee pull up to the [CI] and conduct a hand-to-hand transaction out the driver's side window. ([*Id.* at] 35). Sergeant Newcomer then followed Appellee back to 614 Roup Avenue. ([*Id.* at] 36). Upon his return to the police station, Sergeant Newcomer was given twenty stamp bags from the controlled buy, which were submitted to the crime lab and tested positive for heroin. ([*Id.* at] 37, 41).

On June 17, 2013, officers met with the [CI] and provided him with pre-recorded funds. Sergeant Newcomer was positioned at the meeting point, which was the same place as the day before, and observed Appellee drive up to the [CI] with [Williams] in the passenger seat[,] at which time [Williams] conducted a hand-to hand transaction with the informant and Appellee then drove away. ([*Id.* at] 42-43). Sergeant Newcomer then recovered twenty stamp bags from the [CI] which were submitted to the crime lab and tested positive for heroin. ([*Id.* at] 44-46).

On June 19, 2013, officers met with the [CI] and provided him with pre-recorded funds. Officers set up surveillance and observed Appellee leave the residence in the gray Dodge Dart. He then met up with the [CI] who got into the vehicle, and the two of them drove around the block. ([*Id.* at] 101-[]03, 110-[]11). Thereafter, the [CI] exited the vehicle, and Appellee retuned to the residence a few minutes later. ([*Id.* at] 111). The [CI] was subsequently picked up by officers. ([*Id.* at] 101-[]03). Once in the police vehicle, the [CI] turned over twenty stamp bags to the officers. ([*Id.* at] 104). The narcotics were submitted to the crime lab and tested positive for heroin. ([*Id.* at] 49-50). It was later determined that the Dodge Dart had been rented by [Williams'] paramour, Carrie Schaub. ([*Id.* at] 34-35).

On June 21, 2013, officers obtained a search warrant for the residence at 614 Roup Ave[nue]. ([ *Id.* at] 33-34, 50). [] Appellee, [Williams], and Carrie Schaub were located in the residence and detained. ([*Id.* at] 66-67). The search revealed seven stamp bags of heroin in a DVD case, a backpack containing ninety bricks of heroin, clonazepam, a firearm, $4,000 in cash,

multiple cell phones, a digital scale, and a photocopy of Appellee's driver's license and identification card. ([***Id.*** at] 50-58, 112). The stamp bags recovered during the execution of the search warrant were submitted to the crime lab and tested positive for heroin. ([***Id.*** at] 56). The stamp bags recovered during the execution of the search warrant were consistent with the stamp bags recovered from the controlled buys on June 16, 2013[,] and June 19, 2013. ([***Id.*** at] 51-55). Appellee's identification card was located in the Dodge Dart parked in the driveway of the residence. ([***Id.*** at] 96).

PCRA Court Opinion (PCO), 7/20/20, at 6-8.

Based on these facts,

Appellee was charged by criminal information (CC 201311189) with one count of criminal use of a communication facility, one count of person not to possess a firearm, one count of criminal conspiracy, two counts of corrupt organization, two counts of delivery of a controlled substance, three counts of possession with intent to deliver, and three counts of possession of a controlled substance.

On April 6, 2015, Appellee proceeded to a jury trial, at the conclusion of which Appellee was found guilty of criminal use of a communication facility, conspiracy, delivery of a controlled substance, possession with intent to deliver a controlled substance, and possession of a controlled substance. Appellee was found not guilty of person not to possess a firearm and corrupt organization.

On July 15, 2015, Appellee was sentenced … to an aggregate [term of] six to twelve years['] incarceration with a boot camp recommendation.

On July 21, 2015, Appellee filed a post[-]sentence motion, and an amended post[-]sentence motion on September 21, 2015. The [t]rial [c]ourt denied Appellee's post[-]sentence motions on October 9, 2015.

Appellee filed a second post[-]sentence motion *nunc pro tunc* on October 27, 2015. The Commonwealth filed a response on November 5, 2015. The [t]rial [c]ourt denied Appellee's motion on November 5, 2015.

On November 9, 2015, Appellee filed a Notice of Appeal. On [September 26], 2016, the Superior Court affirmed the judgement [*sic*] of sentence. [**See Commonwealth v. Brown**, 158 A.3d 187 (Pa. Super. 2016) (unpublished memorandum). Appellee did not file a petition for allowance of appeal with our Supreme Court.] On March 22, 2017, Appellee filed a timely PCRA [p]etition. On July 24, 2017, PCRA counsel filed a motion to withdraw as counsel[,] which was granted the following day and new counsel was appointed. On March 23, 2018, counsel filed an [a]mended PCRA [p]etition. On August 20, 2018, the Commonwealth filed an [a]nswer to the PCRA [p]etition. On April 19, 2019, the parties took the taped deposition of trial counsel, David Hoffman, Esq., due to health complications. On May 2, 2019, the [PCRA c]ourt conducted a PCRA hearing. On August 14, 2019, the [PCRA c]ourt granted Appellee's PCRA [p]etition and granted Appellee a new trial.

On September 13, 2019, the [Commonwealth] … filed this timely appeal.

**Id.** at 1-5.

The PCRA court ordered the Commonwealth to file a Pa.R.A.P. 1925(b) statement, and it timely complied. The court filed its Rule 1925(a) opinion on July 20, 2020. Herein, the Commonwealth presents one issue for our review:

I. Did the [PCRA] court err in holding that … Appellee had asserted and established all the requisite elements of a claim of ineffective assistance of trial counsel based on counsel's failure to file a motion to disclose the identity of the Commonwealth's [CI]?

Commonwealth's Brief at 4 (unnecessary capitalization omitted).

Before reviewing the merits of the Commonwealth's issue, we must first assess the PCRA court's conclusion that the Commonwealth waived its claim in its Rule 1925(b) statement. Therein, the Commonwealth stated its issue as follows:

The [c]ourt erred in concluding that [Appellee] had established that his trial counsel provided ineffective assistance in declining to

- 4 -

seek disclosure of the identity of the Commonwealth's [CI]. This was the lone allegation contained in [Appellee's] final [a]mended [p]etition for Post-Conviction []relief and[,] thus[,] the only issue properly before the [c]ourt. [Appellee] did not demonstrate that he could have satisfied the applicable criteria to compel disclosure of the [CI's] identity under the facts and circumstances of his case and[,] thus[, he] failed to establish that such a claim would have been of arguable merit. He also failed to meaningfully allege, much less prove, how he was supposedly prejudiced by the absence of a motion for disclosure of the [CI's] identity. His assertion that the [CI's] identity and/or testimony would have been helpful to his defense was wholly conclusory and[,] thus failed to satisfy the prerequisites for PCRA relief. His claim on this issue was not developed at the evidentiary hearing beyond what was contained in the petition.

Pa.R.A.P. 1925(b) Statement, 11/26/19, at 1-2 (unnumbered).

The PCRA court deemed the Commonwealth's issue waived because it was not concise or coherent, as required by Rule 1925(b). **See** PCO at 10. In support of its decision, the court cited several cases, including **Commonwealth v. Ray**, 134 A.3d 1109, 1114 (Pa. Super. 2016) (finding waiver where Ray's *pro se* Rule 1925(b) statement "presented vague, fragmented statements and phrases without specifying to which of his convictions they pertained"), and **Jiricko v. Geico Insurance Company**, 947 A.2d 206, 213 (Pa. Super. 2008) (finding waiver where the appellant filed a five-page Rule 1925(b) statement that was "an incoherent, confusing, redundant, defamatory rant accusing Geico's attorney and the trial court judge of conspiring to deprive [the a]ppellant of his constitutional rights[,]" and "[t]here [was] simply no legitimate appellate issue presented in [the a]ppellant's statement"). We find **Ray** and **Jiricko** easily distinguishable.

Here, while the Commonwealth's issue is admittedly longer than necessary, it is not vague, incoherent, or confusing, as were the issues set forth in **Ray** and **Jiricko**. Moreover, the Commonwealth raised only two claims in its concise statement and, while it abandoned one of those issues on appeal, there is nothing to suggest that the Commonwealth was impermissibly attempting to overwhelm the PCRA court by filing a statement with "a multitude of issues that [it did] not intend to raise and/or [could] not raise before this Court." **Jiricko**, 947 A.2d at 211 (citation omitted). Finally, the PCRA court did not assert that the Commonwealth's concise statement precluded or hindered its ability to understand or meaningfully review the issue before us on appeal. **See id.** ("[T]he statement must be 'concise' and coherent as to permit the trial court to understand the specific issues being raised on appeal."). Accordingly, we disagree with the PCRA court that the Commonwealth waived its issue, and we will proceed to reviewing the merits of its argument.

The Commonwealth contends that the PCRA court erred by concluding that Appellee's trial counsel, Attorney Hoffman, acted ineffectively by not filing a motion to disclose the identity of the CI. Preliminarily, we note that, "[t]his Court's standard of review from the grant or denial of post-conviction relief is limited to examining whether the lower court's determination is supported by the evidence of record and whether it is free of legal error." **Commonwealth v. Morales**, 701 A.2d 516, 520 (Pa. 1997) (citing **Commonwealth v. Travaglia**, 661 A.2d 352, 356 n.4 (Pa. 1995)). Where, as here, a petitioner

claims that he or she received ineffective assistance of counsel, our Supreme

Court has directed that the following standards apply:

> [A] PCRA petitioner will be granted relief only when he proves, by a preponderance of the evidence, that his conviction or sentence resulted from the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). "Counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him." [**Commonwealth v.**] **Colavita**, … 993 A.2d [874,] 886 [(Pa. 2010)] (citing **Strickland** [**v. Washington**, 466 U.S. 668 ... (1984)]). In Pennsylvania, we have refined the **Strickland** performance and prejudice test into a three-part inquiry. **See** [**Commonwealth v.**] **Pierce**, [527 A.2d 973 (Pa. 1987)]. Thus, to prove counsel ineffective, the petitioner must show that: (1) his underlying claim is of arguable merit; (2) counsel had no reasonable basis for his action or inaction; and (3) the petitioner suffered actual prejudice as a result. **Commonwealth v. Ali**, … 10 A.3d 282, 291 (Pa. 2010). "If a petitioner fails to prove any of these prongs, his claim fails." **Commonwealth v. Simpson**, … 66 A.3d 253, 260 ([Pa.] 2013) (citation omitted). Generally, counsel's assistance is deemed constitutionally effective if he chose a particular course of conduct that had some reasonable basis designed to effectuate his client's interests. **See Ali, supra**. Where matters of strategy and tactics are concerned, "a finding that a chosen strategy lacked a reasonable basis is not warranted unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Colavita**, … 993 A.2d at 887 (quotation and quotation marks omitted). To demonstrate prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." **Commonwealth v. King**, … 57 A.3d 607, 613 ([Pa.] 2012) (quotation, quotation marks, and citation omitted). "'[A] reasonable probability is a probability that is sufficient to undermine confidence in the outcome of the proceeding.'" **Ali**, … 10 A.3d at 291 (quoting **Commonwealth v. Collins**, … 957 A.2d 237, 244 ([Pa.] 2008) (citing **Strickland**, 466 U.S. at 694…)).

***Commonwealth v. Spotz***, 84 A.3d 294, 311-12 (Pa. 2014).

In the case *sub judice*, the PCRA court offered the following rationale to support its decision that Attorney Hoffman acted ineffectively by not moving for the disclosure of the CI's identity:

> With respect to motions to seek disclosure of the identity of the [CI], a court has discretion to require the Commonwealth to reveal the names and address of all eyewitnesses, including [CI]s. While the Commonwealth possesses a qualified privilege to withhold the identity of a confidential source, a defendant can overcome that privilege by establishing, pursuant to Rule 573(B)(2)(a)(i) of the Pennsylvania Rules of Criminal Procedure, that the information sought is material to the preparation of the defense and that the request is reasonable. ***See Commonwealth v. Roebuck***, 681 A.2d 1279, 1283 (Pa. 1996). After such a showing, the court must then exercise its discretion to determine whether the information should be revealed. ***See Commonwealth v. Bing***, 713 A.2d 56, 58 (Pa. 1998). Further, a defendant who seeks disclosure of the [CI's] identity is not expected to predict what the informer would testify to if called as a witness; rather, all the defendant must establish is the reasonable possibility that the informer could give evidence exonerating defendant[.] ***Roebuck***, [681 A.2d] at 1283.
>
> Here, the evidence presented at the PCRA hearing, which incorporated the taped deposition testimony of trial counsel as Exhibit A-1, established that trial counsel was ineffective for failing to seek disclosure of the [CI's] identity. During the deposition, trial counsel conceded that he should have filed a motion to withdraw as counsel prior to trial but failed to do so. Further, trial counsel acknowledged on multiple occasions his knowledge of Appellee's dissatisfaction with his performance and Appellee's repeated requests to file certain pretrial motions, including a motion seeking disclosure of the [CI] due to his claim of mistaken identity. In fact, Appellee was forced to file *pro se* motions, including a motion to seek disclosure of the [CI's] identity, as a result of trial counsel's repeated failure to do so. However, trial counsel failed to even address the filed *pro se* motion with the [t]rial [c]ourt.

- 8 -

Additionally, trial counsel conceded that he believed the credibility of the [CI] was important, yet was unable to provide a sufficient answer for his failure to file the motion for disclosure of the [CI's] identity, or any motions for that matter. Further, the search warrant in this case referenced a "Wonka[,]" who was alleged to be Appellee, and trial counsel conceded he attempted to test the trial identification of Appellee as "Wonka[,]" yet had no reasonable explanation for failing to seek the disclosure of the [CI] prior to trial in an attempt to bolster his argument that Appellee had been misidentified.

The … [c]ourt finds that Appellee established the requisite criteria to compel disclosure of the [CI's] identity. ***Commonwealth v. Payne***, 656 A.2d 77, 79-80 (Pa. 1994) (holding that the Commonwealth was required to disclose the informant's identity to defendant where the defense was mistaken identity). The [PCRA c]ourt further finds, that based upon the testimony presented at the PCRA hearing[,] including the testimony presented in Exhibit A-1 that: (1) there is arguable merit to … Appellee's underlying claim as to counsel's ineffectiveness; (2) trial counsel's actions lacked any reasonable basis; and (3) trial counsel's actions clearly prejudiced Appellee. ***See Fletcher***, [986 A.2d] at 771.

PCO at 12-15 (footnotes and citations to record omitted).

After carefully reviewing the record in this case, we must disagree with the PCRA court's decision. Initially, the PCRA court's reliance on the fact that Appellee was unhappy with defense counsel's decision not to file pretrial motions, and that Appellee filed several *pro se* motions himself, does not establish that counsel acted ineffectively. Moreover, to support its conclusion that the disclosure of the CI's identity was warranted in this case, the PCRA court cited our Supreme Court's decision ***Payne***, which we find distinguishable. In that case, the CI and an officer were present when Payne sold drugs to the CI. ***Payne***, 656 A.2d at 77-78. At trial, the identity of the CI was not revealed, and the officer's testimony was the ***only*** evidence

establishing Payne's identity as the drug dealer. *Id.* at 78. Payne's defense was one of mistaken identity, and he testified that he had never met the officer or sold drugs to the CI. *Id.* In concluding that these facts required disclosure of the CI's identity, our Supreme Court stressed that "[f]undamental requirements of fairness mandate disclosure if the informer is the only material witness besides the single police officer." *Id.* at 79. The Court observed, however, that "***[w]here other corroboration of the officer's testimony exists***, disclosure of the informant's identity is, of course, not necessarily required." *Id.* (emphasis added).

In this case, Sergeant Newcomer testified that he witnessed Appellee engage in a hand-to-hand drug transaction with the CI on June 16, 2013, and that Appellee was also present when his co-defendant, Williams, conducted a hand-to-hand transaction with the CI on June 17, 2013. *See* N.T. Trial, 4/6/15-4/7/15, at 32, 34-36, 40, 43. In addition to Sergeant Newcomer's testimony, Sergeant Joshua Acre testified that he surveilled the controlled buy on June 19, 2013, and he observed the CI get into a vehicle with only one other person in it — the driver, whom he identified in court as Appellee. *Id.* at 101, 102-03. Sergeant Acre followed the vehicle a short distance, after which it stopped and the CI got out. *Id.* at 103-04. Sergeant Acre then picked up the CI, who turned over two bundles of heroin to the officer. *Id.* at 104.

Sergeant Ryan Hanford also testified for the Commonwealth, stating that he saw Appellee, whom he identified in court, leave the Roup Avenue house and get into a gray Dodge car after the CI placed a call to buy narcotics

on June 19, 2013. *Id.* at 110. Approximately ten minutes later, Sergeant Hanford saw Appellee return to the house. *Id.* at 111. In addition to the testimony of these officers, the Commonwealth presented evidence that drugs, cash, and a scale were recovered during the search of the Roup Avenue home where Appellee was staying.

Clearly, this case is distinguishable from *Payne*, as the Commonwealth was not relying solely on identification testimony of a single officer. Additionally, this Court has already previously concluded, in co-defendant Williams' appeal from the denial of post-conviction relief, that the CI's testimony in this case was unnecessary. *See Commonwealth v. Williams*, No. 497 WDA 2019, unpublished memorandum at 7-8 (Pa. Super. filed April 21, 2020). In *Williams*, we reasoned:

> Multiple officers testified during trial that they personally witnessed the CI's drug buys from [Williams] and recovered baggies of heroin from the CI after the buys. Some of these bags were stamped "Yankees," the same label found on 4,500 bags of heroin that officers seized from the residence in which they found [Williams] on June 21, 2013. The officers also recovered a .22 caliber rifle, $4,000.00 in cash, a digital scale and cell phones from this residence, further clear indicia of a drug-selling operation. Given this evidence, the Commonwealth did not need the CI's testimony to establish [Williams'] guilt.

*Id.* We agree with the Commonwealth that the evidence against Appellee "was at least as strong as that against Williams." Commonwealth's Brief at 26. Thus, Appellee's underlying claim that Attorney Hoffman should have filed a motion to compel the disclosure of the CI's identity lacks arguable merit, as we are unconvinced that such a motion would have been granted.

We also note that the PCRA court fails to address the fact that Sergeant Newcomer testified at trial that police had searched for the CI but could not locate him. *See* N.T. Trial at 59. Therefore, even had counsel filed a successful motion to compel the disclosure of the CI's identity, we are unconvinced that Appellee could have located the CI to call as a witness at trial.

Finally, we agree with the Commonwealth that Appellee has not established he was prejudiced by the omission of the CI's testimony. Even had the CI taken the stand and testified that Appellee was not the individual who sold him drugs, we are not convinced that that testimony would have been deemed credible in light of the other evidence of Appellee's guilt, which the Commonwealth aptly summarizes, as follows:

> [Appellee] was seen leaving the 614 Roup Avenue address by law enforcement surveillance personnel immediately after the CI had telephonically arranged a heroin transaction on three different occasions, then was observed by police making transactions, once while in the company of [his] codefendant…, with the CI who had been fully searched before the buy. The CI then turned over to the police heroin that he had gotten from [Appellee] in the transactions. When the Roup Avenue house was searched, [Appellee] himself was physically found there, along with his driver's license, ID card, photocopies of the same, and a large quantity of packaged heroin sporting markings consistent with those on the bags obtained in two (2) of the three (3) controlled buys. In short, the evidence against [Appellee] was overwhelming and the identifications of him made by the police were subsequently corroborated by his undisputed physical presence at the house they testified that they had seen him leave in order to deliver heroin to the CI at the agreed-upon times and places.

Commonwealth's Brief at 25. In light of this evidence, we cannot conclude that, had the CI taken the stand, he would have offered credible, exculpatory testimony that would have changed the jury's verdict.

Accordingly, we conclude that the PCRA court erred by finding that Attorney Hoffman acted ineffectively by not filing a motion to compel the disclosure of the CI's identity. Appellee did not prove that such a motion would have been granted, or that the CI would have been available to testify even had his identity been disclosed. Appellee also failed to prove that the outcome of his trial would have been different had the CI taken the stand. Thus, no relief is due.

Order reversed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/18/2021

- 13 -